Mr. Wright, you may proceed. Thank you, Your Honor, and good morning, and may it please the Court. Where the conviction or sentence is in fact not authorized by substantive law, then finality interests are at their weakest, and a vague law is no law at all in our constitutional system. Your Honors, beginning in 2015, the United States Supreme Court dramatically altered the landscape of void-for-vagueness litigation and federal criminal law in a series of three decisions—Johnson v. United States, Sessions v. DiMaia, and United States v. Davis. This case, of course, arises under the second of those rules—Sessions v. DiMaia—and under that rule, my client's aggravated conviction and his 15-year sentence are substantively unlawful. His continued detention today, yesterday, and every day going forward is unlawful under that rule. There are three reasons— Mr. Wright, can I—oh, I'm sorry. Go ahead and give your three reasons. There are three reasons we'll ask this Court to render in our favor. First, the District Court was wrong about the merits, largely unconceded now. Second, the District Court was right that we had shown cause and prejudice to excuse any default. And third, if we did not have cause, we have shown actual innocence. I'm sorry to interrupt, Judge Alwine. You had a question? No, no, no. I apologize. If we think DiMaia did not overrule prior Supreme Court precedent, does your argument under Reed fail? It does not, Your Honor, so long as you accept that Johnson overruled prior Supreme Court precedent because our claim was foreclosed by James and Sykes. The government argued this at the time. Every court that decided a comparable issue at the time recognized that. And in fact, this court itself did hold, the en banc court held, that Leocal v. Ashcroft continued to foreclose the vagueness attack against Section 16b even after Johnson had cleared away most of the barriers to us constructing this claim. Moreover, in United States v. Williams, which is the controlling case for the related time bar in 2255F3, Williams held that DiMaia opened the door to people like my client sentenced under Section 16b and had not yet opened the door for people sentenced under the nearly identical residual clause in 924C3b. The opening of a door, Your Honor, implies that it was closed previously. And how was it closed? It was closed by Leocal, Your Honor, in which a unanimous Supreme Court itself applied 16b in exactly the wrong way. And of course, in addition to that, the claim that the application of an uncertain risk standard to the judicially imagined ordinary case of a crime, that claim never goes anywhere because it was foreclosed not once but twice in James and Sykes. Leocal was decided in 2004. Yes. Your client was sentenced in October of 2011. Correct. So is the theory that as your client is sitting at sentencing in October of 2011, that there's nothing that he could have said about 16b and its application to his prior convictions that would have preserved a claim for relief? Your Honor, the theory is that we could have done nothing at the time that would have caused a court to reconsider binding precedent from the Supreme Court before that. I think that's the way that cases have talked about cause. Now, in terms of your question of the process of sentencing, I think it's fair to say it was a surprise that Judge Means was going to sentence my client above 10 years. I don't think anyone was expecting that. You can see that my former colleague, the trial attorney, was actually arguing for a 10-hour departure from the case. So that's not to say that if we were on direct appeal, we conceded it was plain error before, but I don't think we were prepared for that at the time. So it was on direct appeal where we litigated this claim. Having worked on the direct appeal, I can say that no, none of us would have thought it was plausible or even permissible to suggest that this court should overrule two decisions from the United States Supreme Court. Do you remember when DeMaio filed his petition for review? I do not. I know... It was 2011. So the thing that's interesting is that DeMaio didn't have any impediment to making the argument, right? He filed his petition the same year that your client was sentenced. DeMaio was not in our circuit. I think, moreover, until Johnson, which was a revolutionary decision, surprised everyone. No one practicing at the time expected Johnson to come out, and even Johnson himself did not present his vagueness claim in his initial argument before the Supreme Court. It was surprising. It was a change, but even after Johnson had overruled it, this court held that you still had not opened the door to a vagueness claim against Section 16B. What do you do with the fact that Johnson didn't surprise DeMaio himself? Because DeMaio himself, four years before Johnson, recognized the need to lodge some sort of objection to the application of 16B in his sentencing. So, I'll say that in the direct appeal, we did lodge objection to the application of 16B. Do you think that raising something on direct appeal, where it's obviously subject to plain error, right, because it was not preserved at the proper time, can ever constitute cause under readme laws? Your Honor, we challenged the application of 16B, but not the existence of 16B. What was not available to us was the claim that it is no law at all. Sorry, I understand. I read what you—I just want to make sure I understand. It's an interesting question about how one preserves something. I'm curious if you can preserve it by raising it in a way that's subject to plain error. Because I've searched for these cases, and I cannot find an example. I was curious if you had one. I want to be sure I have your question. Your question is, if we had recognized and predicted these cases, if we had said, also it's unconstitutionally vague, but that's also subject to plain error, would that be sufficient to avoid a default? Is that the question? Exactly, right. So you would raise it in—so obviously, you didn't raise it at sentencing. You didn't say anything at sentencing about 16B. You didn't say that it shouldn't apply because the statute by its terms doesn't apply. You didn't say it shouldn't apply because it's no law at all, as you led with your opening today. Not one word at sentencing. My question is, suppose that you had raised some of this on direct appeal, not all of it, obviously. Is that ever sufficient to raise it on direct appeal, having forfeited at the trial court, when we, years later, have to do the Rebien-Ross analysis? So, I, of course, don't think there's a default. You probably should ask my friend whether that would be good enough for the government, but I think that it would. I think that if, for instance, our statutory argument had been vindicated, well, we'd have a lot harder time coming in as a successive motion. Currently, we could bring that under a savings clause case, but that may change. I recognize that. I don't know the answer to your question as to whether or not, if we had raised the claim in the direct appeal, that would have been enough to preserve it or not. I can recognize that both of those answers feel wrong for my client, because if the answer is yes, then why didn't you do it? If the answer is no, then, you know, you can never avoid a default in these situations. I'll say this. Abuse of the writ doctrine, which preceded 2255H2, recognized that cause and prejudice for purposes of procedural default and cause and prejudice for purposes of a second or the same, and both of them recognized that cause included a previously unavailable constitutional rule. As far as I know, every court that has addressed a Johnson claim under either cause and prejudice for procedural default or H2 has held that Johnson was not available previously. I don't think the government's analysis allows for that conclusion or explains it, but Johnson was not available. The reason that DiMaia was not available, if you think of Johnson as Judge Jolly did, if you think of DiMaia as just an application of Johnson, well, Welch is the one that shows that it's available to us, and it was not available. And if you think of it as a separate rule, which I think current Fifth Circuit precedent binds this panel, it is a separate rule, then it was unavailable as evidenced by Williams, as evidenced by Gonzalez-Longoria, and in fact, the third rule there, Davis, this court has granted authorization for people to file successive motions under Davis, and that implies that the rule was previously unavailable for purposes of the statute. And in fact, in one unpublished decision, the court has said that we are constrained to follow those authorization decisions when we granted relief. The court granted relief to someone on a successive motion under Davis. I can't yet point to that for DiMaia, but the analysis is the same. In other words, it can't be the case that Johnson was unavailable and Davis was unavailable, but DiMaia was. Now, I haven't read DiMaia's petition for review for the BIA. I don't know if there was any semblance of a vagueness claim. I would be surprised and impressed if they recognized that at the time, but even so, I will fall back on the position that a lone voice crying in the wilderness, or in this case, perhaps there were two who recognized the vagueness of the statute when everyone else, including this court and my office and people who worked very hard to try to be at the forefront of criminal defense, if we could not recognize this was a permissible claim, that's still cause. It doesn't make it available, the fact that someone correctly predicted the way that the law would fall years in the future. So he didn't raise a constitutional challenge in his petition for review in 2011. What he said was, I don't think 16b should apply to my convictions. So he had preserved some sort of objection. Then while he's pending on appeal, Johnson comes down, the Ninth Circuit has 28J letters, supplemental briefing, and he expands his argument as to why 16b shouldn't apply to him. And that obviously succeeds, that's why we call the doctrine DiMaia. And so the question that I have is why, it's obviously not unavailable to him to make some sort of argument about rule 16b. It couldn't possibly have been unavailable to Vargas Soto for the same reason. And so the question is, why would you take two different people, one of whom raises an argument and preserves it, the other of whom does nothing, and treat them the same? As I understand the government's argument, it was the failure to raise the vagueness claim, the constitutional vagueness claim on direct appeal. That was the so-called default in our case. If that's the case, if what Your Honor is saying is that a challenge to the application of 16b is enough, we did that. We did that on direct appeal. We did not fail to challenge the application of that statute on direct appeal. But that would come back to whether raising something in a plain air posture, because obviously we have a ton of cases that say that's not sufficient, would somehow be sufficient for Reed v. Ross purposes when we years later have to figure out whether cause and prejudice applies. And I've looked for that case. I can't find it not only in our circuit, I can't find it anywhere. I guess I could come at it one other way. If we knew back then what we know now. So 16b is no law at all. And we were silent at the time of sentencing as we were here. There's no question this court vacates and reverses. 16b was the only basis to impose a sentence greater than 10 years. And the court has held many times that a sentence in excess of the statutory maximum illegal sentence is plain error almost per se. Substantial rights would be affected. Oh, it's plain error. Is the answer to the question plain error? Even if you have to embrace plain error, you can beat plain error. Absolutely, Your Honor. I mean, it's binding Supreme Court law. And there is no other basis to affirm the 15-year sentence. There is no other basis to affirm the judgment under 1326b-2. What do you see is the path in this case? What is the best and easiest path? What do you want us to do? The easiest path would be to say that previously unavailable for purposes of the statute H-2 is sufficient to satisfy whatever unavailability would be necessary for cause. And you could say that, as other panels have, we are constrained to follow previous decisions from this court that have authorized successive motions under Johnson and under Davis. The panel authorized our successive motion. And there are merest decisions, United States v. Lawrence Taylor under Johnson and a case called United States v. Terrell Clark earlier this year, unpublished case under Davis, which said we are constrained to follow on the retroactivity question. That would be the easiest way to do it. And we don't get into actual innocence in Aguirre-Rivera then? Right. I hate to say that one is easier than the other, because that is also easy from my view, right? You could say— Well, isn't it, Aguirre-Rivera—I hate to say this—isn't it a substantial obstacle here in the innocence part? I don't think it is, Your Honor, because, again, that's a remedial question. The distinction between sentencing factors and elements has been largely defeated by the Apprendi line of cases. But if the—we aren't asking you to vacate the conviction entirely, in other words, to acquit my client. And I think in that sense, that's what that case gets to, the differences between so-called elements, traditional, formal elements, and what may be sentencing-only elements. It does go to the conviction, and that is very clear from Fifth Circuit precedent. I don't think there's an equivalent case regarding 1326 that says this isn't really an element. As a matter of fact, Rojas Luna says that you have to go to the jury on the date of the removal, at least. So this is a true element in every sense of the word. And failing that, this isn't an arborist, but the last time the court did treat the question was in Dretke v. Haley, and this court said this is good enough. Even before what we all know about Apprendi, the court recognized that's probably good enough. I just don't think you need to reach that here. In other words, you don't have to say sentencing-only claims are manifest miscarriage of justice, though there's no reason not to say it other than the last time it happened, the Supreme Court said no, no, no, go back and decide this on the traditional grounds which we have shown. That's why I have focused on cause because we have cause. No one really thinks the claim was available as used in statute and cause and prejudice at the time. That's why there is no case holding that a Johnson vagueness claim was available at the time. Counsel, what do you do with the evolving – I mean maybe you dispute that it's an evolving consensus in the circuits that Bousley overruled the second of the Reed v. Ross categories? We just got at least one 28-J letter recently about that. You're right, Your Honor. I'll say that I do not believe that Bousley overruled Reed v. Ross. I think that Bousley deals either with the Reed category 3 situation or with a statutory – a new statutory rule that is an old rule, not a new rule, and we would submit that's different. Definitely in the Fifth Circuit it's different. Bousley cites Reed v. Ross and Isaac v. Engel. In other words, saying novelty counts. That consensus was invisible to all of the courts who considered the procedural default argument after Johnson, to most of the courts who have considered it after Davis, and we would say that it has not been overruled. And certainly that would not be an easy way to decide this case. I can see that my time has expired, Your Honor. Thank you. Thank you. Mr. McKay. Thank you. May it please the Court, Brian McKay on behalf of the United States. Mr. Vargas Soto wants to fit his novelty claim into one of the Reed subcategories of novelty, but he can't do that because the Supreme Court's explanations of novelty illustrate why it doesn't fit there. And I use the term subcategory because Reed itself acknowledged and explicitly confined its analysis to one particular context in which novelty might arise, and that confining that particular context was one in which after the defendant's case, then the Supreme Court for the first time recognizes a constitutional principle that then a later claim is built upon. And I believe that the Court's decisions in Engle and Ross together provide a perfect roadmap for the Court's analysis here. Because recall that in both cases, the defendants were trying to take advantage of a rule that was first recognized in Mullally that postdated all the defendants' cases. But it wasn't Mullally that the Court looked at to determine novelty. Instead, the Court looked back at Winship and said Winship was where the constitutional principle was first recognized. And should there be any confusion or lack of clarity about this, I would point the Court to the final substantive paragraph in Reed in which the Reed Court distinguished Engle and explained why and said there were two crucial differences between Engle and Reed. First was when Winship was decided because in Engle it predated the defendants' cases. That constitutional principle had already been established. And the second crucial difference in Engle was that other defendants had perceived and were making this type of claim. And they didn't confine it to the Ohio burden-shifting scheme at issue there. They looked at other contexts in which this type of what would later become a Mullally claim was being made. And because other defendants had perceived and were making that claim, even Reed said that's not what we're dealing with in Reed. But that's precisely – that overlays perfectly into Mr. Vargas-Soto's claim. Because – Are we free to go either way on this? I don't – It's not a charted path. No, Your Honor. I believe that the path is charted. It's charted by the combination – By you believe that the Supreme Court tells us what to do. Yes, between the combination of Engle and Reed. But then what do we do with the fact about the other circuits then? And if we rule on procedural default in this way, other circuits have held that Johnson's novelty does establish cause. I would make a – So how do we deal with that? Certainly, Your Honor. It's a good question, and I think the way that it is dealt with correctly is that, first, this isn't a Johnson claim. As Your Honor, I think, asked counsel and acknowledged, this isn't a Johnson claim. And it doesn't fit into like the Reed first category simply because it is a Johnson-like claim. So you say that for this claim there is no other circuit that would go differently or that has gone differently? Correct. There is no circuit that hasn't. In fact, I would point the court to the Eleventh Circuit's decision in Granda in which they said, look, now that is a Davis, a different Johnson-esque claim. But where the Eleventh Circuit said Davis – But it's not – yeah, it's not a Reed third category. It's different. Yeah, Granda is different. Correct, because they said it's not a Reed first category. And I would also point to the Sixth Circuit's decision in Gatewood in footnote three where they don't reach it because he was attacking as vague section 3559, and the court ultimately said, look, he had the constitutional building blocks for that claim. It wasn't novel at the time of his offense. If we disagreed with you and believed that determining whether Johnson – that could be anticipated or whether that was not the novelty is crucial to this case, would we come out against you? I guess if you – if that was the – That's the turning point because the other circuits are coming out the other way on that. On Johnson claims. Yeah, on Johnson claims. And not on DiMaio claims, which, again, the Eleventh Circuit and the Sixth Circuit have recognized may be different and can't just piggyback on Johnson because in Davis and in DiMaio, the Supreme Court didn't overrule any precedent. But I will also note that each of those circuits, none of them – I think two of them even discuss Bowsley and kind of wipe it aside as really not having any effect there. But none of them discuss Engle. And fitting, they seem to presume that Reed is exhaustive of what is novel in explaining novelty. And we know Reed explicitly said that wasn't the case. And none of the circuits have put together Reed and Engle to determine – to grapple with this issue of was it truly novel. Reed did say, though, that when the Supreme Court reverses established precedent and announces a new rule, it's almost certain to satisfy the novelty requirement. With one sort of preexisting assumption, and that is that the constitutional principle hasn't been previously – Well, you know, the Supreme Court before Johnson had said that this residual clause was not vague. It was constitutional. And then in Johnson and DiMaio, they say, well, it is unconstitutional because of the assessment of the risk and the categorical approach. Now, that sounds like a new rule to me. Absolutely, Your Honor. And under 2255H2 or what have you, it's a new rule. But I want to stress the distinction between what the Supreme Court is talking about in Engle and Reed about the underlying animated constitutional principle. And, again, I draw the court's attention back to Reed and talking about – and in Engle where the new rule was Mullally. Absolutely, it was a new rule. But the court didn't assess novelty by looking at the newness of the rule. They looked at the underlying constitutional principle, which was Winship. And I would submit that – Well, it certainly – I mean it was – what they announced was certainly novel. That would prevent most lawyers from raising the question. Respectfully, I disagree. It may be novel in the general use of the term, but people had comprehended, they had apprehended, and were making this claim. I point it with respect to Section 16B in particular and certainly with respect to the similarly worded residual clause. After all, Justice Scalia had explicitly told them this claim is available. Well, one reason that the court advanced for – in Reed for the novelty argument was to avoid lawyers having to raise every imaginable claim and burden the court with frivolous claims. So what you're saying is if the most imaginative lawyer out there raises an issue, then it's not a cause anymore. I disagree, Your Honor, and I know – I mean where would you draw the line there? First is the constitutional principle. Is the animating principle one that the Supreme Court has recognized is valid? And I would submit that DeMaia didn't raise a new – or recognize a new principle, and neither did Johnson. In my brief, I pointed to Harris as one example, and it was not suggesting that's when it arose. But vagueness doctrine existed long before Harris and long before Johnson. When we look at Johnson, it didn't announce like this is a new animating – a legal tenet upon which claims can be made. Instead, it pointed back to Kohlander decided in 1983 where there they said, look, it's well established that a statute is prone to be attacked as unconstitutionally vague if it – The court in Welch did say that Johnson announced a new rule for retroactivity purposes. Yes, Your Honor, and if I can – I cannot stress more that there's a distinction between new constitutional rules as meant by H-2 or F-3 or what have you, new constitutional rules, and what the Supreme Court has explained in respect – with respect to novelty is the animating underlying constitutional principle that then is used to build rules on top of that principle. Johnson didn't announce a new constitutional principle. It was well established. And – You got any circuit case that supports you? I'm sorry? Any of the circuit cases support you? Well, they haven't grappled with it in the Maya, and as I noted, they certainly haven't distinguished between rules and this constitutional principle as Engel and Ross meant it in these other cases. But – I wonder if we could analogize to a different area where your office and the Federal Public Defender's Office engages our court almost on a daily basis, and that is the Almendrez-Torres exception to Apprendi. So that is something that – the fact of a prior conviction exception to Apprendi and what the jury has put in the indictment the jury has to find beyond reasonable doubt. The Federal Public Defender's Office routinely raises these sorts of claims to preserve them, presumably for some purpose. Your office routinely files motions for summary disposition with us, which our court routinely grants, because this is foreclosed by current precedent. But I assume that the purpose of their filing the motions and your filing the disposition motions is that the preservation has some purpose to actually preserve the claim. If I'm understanding the sort of arguments that are being made today, if we go – if we reverse here, we're effectively saying that every single one of these Almendrez-Torres things is utterly useless and totally a waste of time because everyone would be shocked if the court actually overruled Almendrez-Torres and followed Apprendi in that circumstance. Is that – am I understanding the dynamic? Yes, Your Honor, and I think that makes a good point. And another thing that the Almendrez-Torres example does is it illustrates that I think Mr. Vargas Soto is wrong to try to, first of all, collapse futility and novelty. The Supreme Court in Bousley explicitly said these are very different things. Wasn't that one reason the court announced that first rule? When we overrule an established precedent and announce a different rule, then that's almost certainly novel within the cause concept. I don't believe so, Your Honor. The – and the court in Scruggs, I think, reiterated that, look, this is commonly done. Defendants raise this claim even though they don't think it has merit or even if they believe it's foreclosed. I mean how would you have a rule like that? How many times does it have to be raised? I mean if just one – raising it one time and the state supreme court do it, do you have to raise it? I mean how would you apply a rule like that? I would submit that Amandaris-Torres is the perfect illustration of that. Defendants do it all the time. I suspect that the court receives dozens at least per month, and it shows that a claim's availability – and again, I'm talking about novelty. I'm not talking about H-2 terms of novelty. That is a statutory term. That is a different context. It's an apple to this orange. Well, so if you have to do it, like if you're saying you must do it like Amandaris-Torres, that you have to do that, then does that mean that we should have three – this is following up on Judge Davis' question. You have to have three pages of disclaimers and all of these other cases that might come to bear, you know, this anticipatory – I mean we're well aware of that one, but you have to say, oh, there could be all of these others that we have to do a whole bunch of disclaimers at every hearing, and maybe you have to file it as part of your objections to the jury verdict, and then to the sentencing, and then you need to put in your disclaimer letter. Isn't that – doesn't it create just a whole bunch of extra work that the Supreme Court told us we didn't need to do? Not at all, Your Honor. The court in Murray and Smith and in Carrier, both, they were explaining that sometimes counselors have to winnow through the arguments and figure out which ones have enough merit and make those claims, and if they don't, they're procedurally defaulted. And it's not – I would say first of all, it's not just anything they can imagine. There has to be a constitutional underpinning, a legal basis that's been recognized. Hick Hall was a huge barrier. I'm sorry? Hick Hall was a huge barrier. It was a barrier, but it certainly did not foreclose, and I want to make that point very, very clear. Leocal did not foreclose a 16b challenge, and neither did James, but of course it didn't deal with 16b. And I think the perfect illustration of that is this court's decision in Navarres-Puentes in 2008. After, if that claim had been foreclosed, then I'm certain this court would have said, that is foreclosed. The court didn't point to Leocal. The court didn't point to James to rule that that claim had no merit. Instead, it pointed to Colander, the very same case that provided the constitutional principle that animated Johnson. So that claim could have been made. It was not foreclosed at the time of Mr. Vargas's sentence. Let me just ask you, how would you write the rule that you're arguing for that if an argument has been raised, then it defeats any argument of cause? How would you write that rule? I would write it the very same way I think that the Reid court wrote it in the final substantive paragraph of that opinion, and that is, first of all, is the animating constitutional principle one that existed and was recognized at the time of the defendant's case? Yes, vagueness doctrine was well-established, and defendants, vagueness doctrine was not new after. I'm speaking about the novelty type feature of it. That does go to novelty, but then the second— You're resting your argument on the fact that this was not a new constitutional principle. You're not arguing that the argument's not novel. I'm arguing that the argument wasn't novel because the constitutional basis of the claim already existed, but also because other defendants, as I point out in my brief, other defendants knew to raise this claim, and they were actually raising this claim at the time. How many times would they have to raise it before it would not be considered novel? Well, in Engle, I believe they used the term dozens. It had been raised dozens of times. In Bowsley, they used the term replete. Federal reporters were replete with this type of claim. They've never pegged a certain number of cases, and I think that makes perfect sense. And I think if we look at Mr. Vargas Soto's appellate pleadings in particular, certainly he was aware of it. He was borrowing from Justice Scalia's dissents in which he explicitly said this claim exists. It is available. Now, he decided not to assert it, but that was his deliberate decision. That was not simply something that, oh, it never occurred to me that you could challenge 16b as unconstitutionally vague. Now, I do want to reiterate that his argument seems to collapse novelty and futility into the same, and I want to echo the Ninth Circuit's recent language in Pollard in which they said, look, there's not different gradations of futility at some point at which becomes novelty. And, again, I think the current practice with respect to Almedera's Torres reiterates that. Also in Engel footnote 41 where they point out that, look, just because a claim doesn't succeed, that doesn't mean that it's not novel. Novelty turns on and its availability turns on whether the constitutional underpinning existed and other defendants have apprehended and are making this claim. Briefly, I'd like to address the actual innocence. Precisely, Your Honor. I'd like to turn to that issue. And, again, I think this is another example of where Mr. Vargas Soto is trying to fit square pegs into a round hole where it doesn't fit, taking similar language and trying to use it in mismatched context, in the context where it's really apples and oranges. And so I would return the Court to a couple of fundamental principles that the Supreme Court has reiterated about the actual innocence exception. First, the Court has repeatedly stated that this exception is very limited. It's for the extremely rare case in which someone who can't meet the cause and prejudice standard can still make a substantial showing that they're actually innocent of the crime. You're not disputing, though, that the sentence was substantively unlawful. After DiMaia, this sentence could not be imposed based on a manslaughter case. So why isn't that he's innocent of that, so he shouldn't be sentenced? That's the question. Certainly. And Your Honor pointed to the recent decision in Aguirre-Rivera, and I believe that is a great illustration of why he's not innocent. He points to cases in which the Court reformed a judgment under 1326b, but first of all— We do that all the time, though, don't we? We do that all the time, but the Court has never— I think it has some immigration consequences or something, and so we're constantly reforming now. Correct, but the Court has never said, oh, and this also entitles him to surmount the procedural bar in habeas. That's never been done, and even stepping back in the more general sense, the Court doesn't say, oh, and therefore they're innocent. Even under the general use of the term. The culpable conduct is the illegal reentry, and whether or not he had an aggravated felony at the time he illegally reentered, he's still guilty. The other fundamental sort of core principle about this— But he wouldn't have had that sentence. He would not have— There's no way he would have had that sentence. There's not some alternative reason he would have had that sentence. Correct, and the Supreme Court has never extended actual innocence to a noncapital sentence. The other core principle that I want to return the Court to is that we're talking about factual innocence when we're talking about actual innocence. And the facts—his isn't a claim of factual innocence. He's tried to bootstrap it into factual innocence, but it's really—it's a claim of legal error. The facts were the same the day that he entered his guilty plea. They're the same as the day he was sentenced. The day that the Court announced him Maya didn't change the facts here, and they're the same here. But it's no longer a crime. Oh, it is. It absolutely is still a crime. It never—doesn't qualify into this crime for this particular sentence. For this particular sentence, yes, Your Honor. I see that my time is up. I'm going to ask the Court to affirm the District Court. Thank you. Thank you. Counsel, can you help me understand why the federal public defender files a Mendoza-Torres preservation motion? I'm glad you mentioned that, Your Honor. Before I answer that question, I'd like to give you a citation that wasn't in our briefs. United States v. Pineda-Arellano, 492 F. 3rd 476. That's a 2007 decision. When the then-Chief Judge of the Fifth Circuit on that very issue sent out a warning, this is—Almendarez-Torres is no longer a reasonable basis to appeal. The Supreme Court has spoken twice. That was after James. So Almendarez-Torres was the decision, and then James refused to reconsider it, and we were warned that there could be ethical or judicial consequences to continuing to preserve it. I agree. That was our reaction at the time, too, Your Honor. Surprise, shock. No, my surprise is actually a little bit different because I saw one last week. They do it all the time. The difference between the claims—the reason we preserve them is because it makes a difference on direct appeal. I will preserve an issue if I plan on—if I think there is a colorable basis to extend existing law, and the basis has gotten only stronger since then. A majority of the justices, including the justices who voted against my office in Almendarez-Torres, have said, we got that one wrong. So in other words, this is a very different jurisprudential landscape to decide what claims are worth preserving or what claims could ethically be preserved than the one that existed after James and Sykes. It was the theory that, well, in 2011, I just had Justice Scalia, whereas now I have five justices who have questioned the Almendarez-Torres exception. So there's a distinction between one justice and five justices? There's that. In 2011, we didn't know you could raise it as a facial challenge. What existed before then was you had to show on your facts, and the Supreme Court had just said in Sykes that evading arrest with the vehicle was a residual-clause violent felony. So we couldn't make an as-applied challenge at the time because the Supreme Court itself said this is good enough. The Fifth Circuit had applied its own ruling in Harriman in the context of 16b in Sanchez-Litesma, and we fought those hard and lost. So it is on a completely different footing than Almendarez-Torres, but the reason that we preserve them is because we hope to do something about them on direct appeal. And if the Supreme Court overturned Almendarez-Torres, do you think that that would be novel? Depending on the basis. If it was a new constitutional rule that was announced, then yes. Well, it would be extending Apprendi to the fact of a prior conviction. Right. I don't know. It's a good question. I think that the recent decision in Rahaf has taught me that you probably have to do a lot more. In other words, it's going to be harder to show innocence just because they didn't put it in the plea or the jury didn't find it. Well, Rahaf is a statutory case. This would be extending the Sixth Amendment. Right. I'll say that the government's argument applies with equal force to Johnson, stronger with Johnson. As the government points out, many, many people were challenging the residual clause of the ACCA. The unsuccessful dissents from Justice Scalia were related to that one, and no court found that that was an available rule. No court said that's not novel. So the government is the one asking you to make new and extreme law, unfair and unprecedented, not us. Your Honor, the government also can't account for Reed because people did perceive that there were problems, due process problems, with burden-shifting regimes prior to Winship. And the government's authority, Isaac v. Engel, says so. Reed still had cause. I agree with the government that we should look for the most important constitutional decision upon which the constitutional claim is based. I disagree that that is anything other than Johnson or Johnson plus DiMaia in this case. Is there a single court in the country that has extended – that has granted cause and prejudice under B.B. Ross for a DiMaia claim? There aren't that many DiMaia claims. But is there one court in the country that agrees with you on this? If I had found it, you would have heard about it. It's not to say that I won't. So it sounds like permission to file a 28-J if we find it. Would you address counsel's argument that Johnson didn't announce a new constitutional rule, that he was just tweaking a normal constitutional rule? That would be wrong. I'm not sure that's what my friend is arguing. I can't speak for him. I think he's saying it's a new rule but not a new principle. Or it's a – I think it's a mistake to introduce another artificial distinction between now principles and rules and rights rather than following the intuitive way. There's very little that's intuitive about this. A new rule is a new right, is a new principle, is cause. And it is previously unavailable for purposes of 2255H2, something that every court has recognized for Johnson. This court has recognized on the merits for Johnson. At the SOS authorization stage, it's recognized for Davis. And at the authorization stage, recognized for this one. It was previously unavailable. That's just what unavailable means. In other words, this was not an available claim. And if that weren't the case, then Williams would have been written differently. Gonzales-Longoria wouldn't have been taken en banc in reverse. It just wasn't even after Johnson. Johnson was a necessary but not sufficient basis. And we were sentenced and appealed before Johnson. Thank you, Your Honors. Thank you, Mr. Wright. We have your argument. And Mr. McKay, Mr. Wright cited a case that was not in his brief and he owned up to that. But you have a right to file a 28J responding to that case within three business days if you choose to do so, sir. Thank you. We're going to take a ten-minute recess before considering the next case for the day. This case is submitted, though. Thank you. And I want to say thank you, I think, on behalf of the panel. This is a very complicated area of the law, a lot of moving parts, and the arguments have been very helpful to the court on both sides today. Thank you.